## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SUNEDISON, INC. SECURITIES LITIGATION | Civil No. 16-md-2742 |
| CARLOS DOMENECH ZORNOZA, <br><br> Plaintiff, <br><br> v. <br><br> TERRAFORM Global, INC., et al., <br><br> Defendants. | Civil No. 18-cv-11617 |

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

I.     PLAINTIFF SUED IMPROPER DEFENDANTS ...........................................................7

     A.    The Yieldcos Were Not Plaintiff's Employer.......................................................7

     B.    Mr. Chatila Is Not Individually Liable ...............................................................12

II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER THE
APPLICABLE BURDEN-SHIFTING FRAMEWORK .....................................................14

     A.    Plaintiff Cannot Meet His Burden To Demonstrate His Alleged Protected Activity
Was A Contributing Factor In The Termination Of His Employment ..................15

           1.    The Record Contains No Evidence Of Retaliation And Instead Contains
Considerable Evidence To The Contrary...................................................16

           2.    Arguments Regarding Temporal Proximity Are Insufficient To Survive
Summary Judgment And, Regardless, Lack Merit ....................................18

     B.    The SUNE Board Would Have Terminated Plaintiff's Employment Absent The
Alleged Protected Activity .................................................................................19

III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY
ARE NOT LIABLE FOR PLAINTIFF'S ALLEGED INJURIES OR DAMAGES.........21

     A.    Defendants Did Not Cause Plaintiff's Alleged Injuries Or Damages...................21

     B.    Plaintiff's Failure To Make Any Effort To Seek Alternative Employment Bars
Recovery Of Damages .........................................................................................24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arbercheski v. Oracle Corp.*,
  650 F. Supp. 2d 309 (S.D.N.Y. 2009) .................................................................25

*Barrick v. Pngi Charles Town Gaming, LLC*,
  799 F. App'x 188 (4th Cir. 2020) .........................................................................18

*Bechtel v. Admin. Rev. Bd.*,
  710 F.3d 443 (2d Cir. 2013) ...........................................................6, 15, 19, 22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................................6

*Clinton's Ditch Co-op Co. v. N.L.R.B.*,
  778 F.2d 132 (2d Cir. 1985) ...............................................................................11

*Coles v. Deltaville Boatyard, LLC*,
  2011 WL 1750896 (E.D. Va. May 6, 2011) .......................................................24

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998) ...............................................................................16

*El Sayed v. Hilton Hotels Corp.*,
  627 F.3d 931 (2d Cir. 2010) (per curiam) ..........................................................18

*Feldman v. Law Enforcement Assocs. Corp.*,
  752 F.3d 339 (4th Cir. 2014) .........................................................................17, 19

*Fraser v. Fiduciary Tr. Co. Intern.*,
  2009 WL 2601389 (S.D.N.Y. Aug. 25, 2009), *aff'd*, 396 F. App'x 734 (2d
  Cir. 2010) ............................................................................................................18

*Guitron v. Wells Fargo Bank, NA*,
  619 F. App'x 590 (9th Cir. 2015) (per curiam) ..................................................20

*Hartzman v. Wells Fargo Advisors, LLC*,
  2017 WL 2982997 (M.D.N.C. July 12, 2017) ....................................................20

*Hemphill v. Celanese Corp.*,
  430 F. App'x 341 (5th Cir. 2011) .......................................................................21

*Holt v. KMI-Continental*,
  95 F.3d 123 (2d Cir. 1996) .................................................................................16

*Kshetrapal v. Dish Network*,
    LLC, 2018 WL 1474375 (S.D.N.Y. Mar. 23, 2018)...............................................................22

*Lawson v. FMR LLC*,
    571 U.S. 429 (2014)...............................................................................................................11

*Leshinsky v. Telvent GIT, S.A.*,
    873 F. Supp. 2d 582 (S.D.N.Y. 2012)............................................................................10, 11

*Leznik v. Nektar Therapeutics, Inc.*,
    2007 WL 5596626 (ALJ Nov. 16, 2007)......................................................................13, 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................................................................21

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................................................................6

*Matter of: Walters v. Deutsche Bank AG*,
    2009 WL 6496755 (U.S. Dept. of Labor SAROX Mar. 23, 2009)........................................11

*Meyer v. United Air Lines, Inc.*,
    950 F. Supp. 874 (N.D. Ill. 1997) .........................................................................................24

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    2015 WL 13699239 (S.D.N.Y. Mar. 25, 2015) ....................................................................25

*Morangelli v. Chemed Corp.*,
    922 F. Supp. 2d 278 (E.D.N.Y. 2013) ..................................................................................11

*Niagara Mohawk Power Corp. v. Jones Chem. Inc.*,
    315 F.3d 171 (2d Cir. 2003).....................................................................................................6

*Pardy v. Gray*,
    2008 WL 2756331 (S.D.N.Y. July 15, 2008) .......................................................................19

*Rao v. Daimler Chrysler Corp.*,
    2007 WL 1424220 (E.D. Mich. May 14, 2007).....................................................................14

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013).....................................................................................................24

*Sanderson v. City of New York*,
    1998 WL 187834 (S.D.N.Y. Apr. 21, 1998)..........................................................................25

*In re Sec. Capital Assur. Ltd. Sec. Litig.*,
    2011 WL 4444206 (S.D.N.Y. Sept. 23, 2011).......................................................................22

*Selzer v. Fleisher*,
      629 F.2d 809 (2d Cir. 1980).................................................................................22

*Tompkins v. Metro-N. Commuter R.R. Co.*,
      983 F.3d 74 (2d Cir. 2020)............................................................................15, 18

*Wiest v. Tyco Electronics Corp.*,
      812 F.3d 319 (3d Cir. 2016)..............................................................................17

**Federal Statutes**

Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49
      U.S.C. § 42121(b) ..............................................................................................6

Federal Railroad Safety Act, 49 U.S.C. § 20109 .......................................................15

Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ............................................... *passim*

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................6

Local Rule 56.1 ............................................................................................................2

Rule 12(b)(6)...............................................................................................................23

**Regulations**

29 C.F.R. § 1980.101(g) ...............................................................................................7

**Other Authorities**

*ACLI Gov't Sec. v. Rhoades*,
      1998 WL 142347 ..............................................................................................12

TerraForm Global Holdco LLC ("GLBL," formerly TerraForm Global, Inc.), TerraForm Power Parent, LLC ("TERP", formerly TerraForm Power, Inc.) (collectively the "Yieldcos"), Ahmad Chatila, and Brian Wuebbels (collectively, the "Defendants") submit this Joint Memorandum of Law in Support of Their Motion for Summary Judgment.

## INTRODUCTION

Plaintiff Carlos Domenech Zornoza ("Plaintiff" or "Mr. Domenech") is a former SunEdison, Inc. ("SunEdison" or "SUNE") executive whose employment was terminated in November 2015.  In August 2018, Plaintiff brought this action against Defendants and others, but not his employer, SUNE.  Plaintiff's sole remaining claim is that the termination of his employment was in retaliation for alleged whistleblowing, in violation of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A.  After more than a year and a half of discovery, on top of significant discovery in the factually-related multi-district litigation, there is no genuine dispute of material fact as to the following independently dispositive issues:

*First,* Plaintiff sued the wrong defendants.  The Yieldcos are improper defendants because Plaintiff was an employee of SUNE, not of the Yieldcos.  Mr. Chatila is an improper defendant because he cannot be held liable as a Yieldco or SUNE director.  Nor can he be liable in his capacity as a SUNE officer or employee because the SUNE board of directors (the "SUNE Board")—and not Mr. Chatila individually—terminated Plaintiff's employment.  Mr. Wuebbels is an improper defendant for the reasons described in his separate brief.[1]

*Second*, Plaintiff has no evidence (aside from his own self-serving speculation) demonstrating that any alleged whistleblowing was a contributing factor in his termination.  As such, he has failed to meet his burden as to a *prima facie* case of retaliation under section 1514A.

---

[1] All Defendants join in the separate Motion for Summary Judgment filed by Defendant Brian Wuebbels.

*Third*, clear and convincing evidence shows that Plaintiff's employment with SUNE would have been terminated irrespective of any whistleblowing because (1) he failed to support and advance key transactions; (2) he leaked confidential information to a third party, which adversely impacted an important transaction; and (3) he failed to work collaboratively, including undertaking efforts to undermine SUNE leadership to promote his own advancement.

*Finally*, Defendants did not cause Plaintiff's asserted damages (*i.e.,* loss of salary, benefits, and stock); those were tied to his employment by SUNE and occurred solely because *SunEdison terminated his employment*, which occurred after he was removed from his positions with the Yieldcos.  Moreover, Plaintiff's recovery of back pay or front pay is barred for failure to mitigate damages.

Defendants are therefore entitled to summary judgment.

## FACTUAL BACKGROUND

SUNE hired Plaintiff in 2007 and he remained employed by SUNE until the termination of his employment on November 20, 2015.  SOF ¶¶ 16, 32-71.[2]  Per his employment agreements, Plaintiff was an at-will employee who could be terminated at any time.  SOF ¶¶ 35, 44.  In early 2014, the SUNE Board decided to appoint Plaintiff as the President and Chief Executive Officer of TERP, a SUNE subsidiary.  SOF ¶ 40.  In 2015, the SUNE Board appointed Plaintiff as the President and Chief Executive Officer of GLBL, also a SUNE subsidiary.  SOF ¶ 41.  Plaintiff at all relevant times received his salary from SUNE.  SOF ¶ 43.

During the relevant time period, Defendant Ahmad Chatila served as Chairman of each Yieldcos' board of directors, as a director on the SUNE Board, and as CEO of SUNE.  SOF ¶¶ 10-12.  He did not serve as an officer of either Yieldco.  SOF ¶¶ 10-12.  Defendant Brian

---

[2] References to "SOF" are to Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment filed herewith pursuant to Local Rule 56.1.

Wuebbels served as a director of each of the Yieldcos and CFO of SUNE.  He did not serve as an officer of either Yieldco until after Plaintiff's removal from the Yieldcos.  SOF ¶¶ 13-15.

In July 2014, TERP issued an Initial Public Offering ("IPO"), and GLBL did the same in July 2015.  SOF ¶¶ 3, 6.  SUNE retained a controlling stake in both companies.  SOF ¶¶ 8-9.  In connection with the IPOs, the Yieldcos issued Form S-1 Registration Statements, which Plaintiff signed and affirmed.  SOF ¶¶ 45-46; 52-54.  The S-1s confirmed that each Yieldco "[did] not have any employees," that the Yieldcos' executive teams specifically worked for SUNE and not the Yieldcos, that equity incentive awards under TERP's Long-Term Incentive Plan would be given to "employees of SunEdison" performing services for TERP, and that Management Services Agreements ("MSAs") would govern the terms and conditions under which SUNE employees would provide services to the Yieldcos.  SOF ¶¶ 47-48; 55-56.

In July 2015, SUNE and TERP entered into a binding agreement to purchase Vivint, Inc. (the "Vivint Transaction").  SOF ¶ 80.  The Vivint Transaction contemplated future drop-down transactions from SUNE to TERP, meaning the Vivint business being acquired by SUNE would develop and construct projects and then for a purchase price, "drop down" projects to TERP once they were operational and ready to generate cash.  In turn, TERP would manage the projects, receive the cash earnings from the projects, and pay dividends to its shareholders, including SUNE, from the steady cash flow that the assets generated.  SOF ¶ 84.  In October 2015, because of changed market conditions, SUNE and TERP began to renegotiate the terms of the Vivint Transaction.  SOF ¶ 83.  If SUNE and TERP failed to close on the transaction, Vivint would have sued TERP and SUNE.  SOF ¶ 87.  As Executive Vice President of SUNE and President and CEO of the Yieldcos, Plaintiff was responsible for advancing the Vivint Transaction and

3

facilitating approval by TERP's conflicts committee.  SOF ¶ 81.  Nevertheless, SUNE executives understood that Plaintiff was opposed to the passage of the transaction.  SOF ¶¶ 85-86.

In early October 2015, Plaintiff alleges that he, alongside three other SUNE employees, raised concerns to the SUNE Board regarding SUNE's financial position and the accuracy of public statements concerning SUNE's liquidity.  Compl. ¶ 3.  Defendnats deny Plaintiff raised anything other than concerns regarding SUNE's liquidity and internal reporting.  In response, the SUNE Board launched a detailed review and asked SUNE management for a presentation on the company's liquidity and financial position.  SOF ¶¶ 92-93.  Plaintiff was given the opportunity to discuss his concerns directly with the Board.  SOF ¶ 92.  Additionally, the respective chairs of SUNE's Finance and Investment Committee and Audit Committee traveled to St. Louis to meet with the SUNE's finance team, internal audit team, and the company's auditor, KPMG International, and participated in a liquidity review.  SOF ¶¶ 92-93.

Meanwhile, serious performance issues with Plaintiff had begun to crop up.  SUNE Board members testified that Plaintiff failed to cooperate with the SUNE Board and failed to perform his duties to advance and facilitate the Vivint Transaction by obstructing the transaction and causing the negotiations to stall.  SOF ¶¶ 85-86.  Moreover, deponents testified Plaintiff became increasingly difficult to work with, was not cooperating with SUNE's executive leadership or the SUNE Board, and that he undermined SUNE's current management in an effort to take over Mr. Chatila's position as CEO of SUNE.  SOF ¶¶ 72-78.  Then, in or around late October or early November 2015, Plaintiff leaked confidential information about SUNE's financial condition to Bank of America Merrill Lynch ("BAML"), and BAML later canceled its agreement to provide tax equity financing for a set of projects SUNE was developing in Hawaii. SOF ¶¶ 88-91.

Thereafter, the SUNE Board made the decision to terminate Plaintiff's employment with SUNE.  On November 20, 2015, SUNE exercised its right to appoint three new members to the Yieldcos' boards of directors who were then appointed to serve on the Yieldcos' conflicts committees.   SOF ¶ 101.  The Yieldco Boards then each separately voted to remove Plaintiff from his positions as their President and CEO.  SOF ¶¶ 104-105.  Later that day, SUNE's Human Resources Director, Stephen Cerrone, met with Plaintiff to effectuate the termination of his employment with SUNE.  SOF ¶¶ 106.  Two other SUNE executives who had raised similar concerns regarding liquidity were not terminated from employment.  SOF  ¶¶ 100.

Mr. Chatila, Peter Blackmore, Emmanuel ("Manny") Hernandez, and Steven Tesoriere were the only deponents who, as members of the SUNE Board were privy to the reasons for the board's decision to terminate Plaintiff's employment with SUNE.  SOF ¶ 96.  They testified that various reasons, including Plaintiff's performance issues and the BAML leak, led to his termination.  SOF ¶¶ 72-99.  They each testified that the termination of Plaintiff's employment had nothing to do with his alleged whistleblowing.  SOF ¶¶ 98.  Plaintiff was not privy to discussions regarding the reasons for his termination.  SOF ¶¶ 107-109.  Following the termination of his employment, Plaintiff did not search for a new job.  SOF ¶¶ 117-118.

### LEGAL STANDARD

Section 1514A provides that no public "company . . . or any officer, employee, contractor, subcontractor, or agent of such company . . . , may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee" related to informing authorities or supervisors of suspected violations of the securities laws.  18 U.S.C. § 1514A(a).

"The relevant burdens of proof" for evaluating a section 1514A claim "are contained in

the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ('AIR 21'), 49

U.S.C. § 42121(b)." *Bechtel v. Admin. Rev. Bd.*, 710 F.3d 443, 446–47 (2d Cir. 2013) (citing 18

U.S.C. § 1514A(b)(2)).  The employee must establish a *prima facie* case by "prov[ing] by a

preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew

that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and

(4) the protected activity was a contributing factor in the unfavorable action."  *Id.* at 447 (internal

quotation marks omitted).  If the employee does so, the burden shifts and the employer "may

avoid liability if it can prove by clear and convincing evidence that it would have taken the same

unfavorable personnel action in the absence of that protected behavior."  *Id.* (internal quotation

marks omitted).

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a

section 1514A case, the employee must "make a showing sufficient to establish the existence" of

each element of the prima facie case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This

requires more than "[c]onclusory allegations, conjecture, and speculation."  *Niagara Mohawk

Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).  Instead, a "rational trier of

fact" must be able to determine the employee has made his prima facie case.  *Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the employee carries his

burden, the employer is still entitled to summary judgment if there is "no genuine dispute" that

the record clearly and convincingly demonstrates the adverse action would have been taken even

in the absence of protected activity.  Fed. R. Civ. P. 56(a).

**ARGUMENT**

Plaintiff's claim fails as a matter of law because Defendants cannot be liable under section 1514A; Plaintiff's recourse under the statute, if any, is against SUNE.  Moreover, after extensive discovery, Plaintiff has no evidence that the concerns he allegedly raised were a contributing factor in the termination of his employment.  He therefore has not met his burden of establishing a *prima facie* case, and Defendants are entitled to summary judgment.  But even if he had, the burden would shift to—and be met by—Defendants.  Clear and convincing evidence demonstrates that the SUNE Board would have terminated Plaintiff's employment in the absence of any alleged protected activity due to Plaintiff's serious performance issues.  And, at bottom, Plaintiff's claim fails because Defendants did not cause his alleged damages, which Plaintiff did not attempt to mitigate in any event.  Defendants are entitled to summary judgment.

## I.   PLAINTIFF SUED IMPROPER DEFENDANTS

As relevant here, section 1514A states that no public company or "any officer, employee, contractor, subcontractor, or agent of such company" may "discharge" an "employee" because the employee informed authorities or supervisors of suspected violations of the securities laws. 18 U.S.C. § 1514A(a).  Defendants cannot be liable under this provision and are entitled to summary judgment.

### A.   The Yieldcos Were Not Plaintiff's Employer

Section 1514A limits liability to publicly traded employers or those with "actual authority to retaliate against" an employee of a publicly traded employer.  Op. and Order on Mot. to Dismiss (Dec. 9, 2019) (Dkt. 683) at 28 ("MTD Order"); *see also* 18 U.S.C. § 1514A(a).  SOX's implementing regulations specify that an "[e]mployee" "means an individual presently or formerly working for a covered person, an individual applying to work for a covered person, or an individual whose employment could be affected by a covered person."  29 C.F.R.

7

§ 1980.101(g).  Plaintiff alleges that his employment was terminated for reporting misstatements by SUNE personnel about SUNE's financial state.  As Plaintiff did not work for, apply to work for, or have his employment affected by the Yieldcos, Plaintiff's redress for the alleged damages (if any) lies with his employer, SunEdison.

Plaintiff was not an "employee" of the Yieldcos—the Yieldcos did not hire him, did not pay him, did not control his compensation, and did not (and could not) fire him.  Rather, there is no genuine dispute that *SUNE* was Plaintiff's employer.  Pursuant to the MSAs, SUNE provided all Yieldco personnel and had the sole power to assign and remove dedicated personnel at the Yieldcos.  SOF ¶ 59.[3]  SUNE hired Plaintiff years before the Yieldcos existed and later assigned him to the Yieldcos.  SOF ¶¶ 32-41.  He was paid not by the Yieldcos, but by a wholly owned SUNE subsidiary, NVT LLC.  *See* SOF ¶ 43.  The only employment agreement was between Plaintiff and NVT. As Plaintiff acknowledged in his signed consent, his employment agreement with NVT remained in effect until Plaintiff's termination from SUNE on November 20, 2015.  *See* SOF ¶ 39.  SUNE, not the Yieldcos, reported Plaintiff's compensation in its securities filings.  And SUNE, not the Yieldcos, terminated his employment, as Plaintiff himself alleges.  Compl. ¶ 111.

In fact, there is no genuine dispute that the Yieldcos had no employees until December 2016.  SOF ¶ 18.  Plaintiff signed and authorized S-1 Registration Statements for both Yieldco IPOs which stated that "[p]ursuant to the [MSA], [SUNE] has committed to provide us . . . executive officers and other key officers.  We expect that certain of these professionals will

---

[3] Although the TERP MSA required approval of a committee of TERP's independent directors before SUNE could terminate the employment of TERP's executive officers, SUNE (and only SUNE) could initiate termination.  SOF ¶ 62.  The GLBL MSA required GLBL board approval of the individuals provided by SUNE to act as GLBL senior officers but similarly did not give GLBL any power to terminate SUNE employees tasked to GLBL.  SOF ¶ 63.

provide such services to us on a dedicated basis.  **We do not have any employees**.  The personnel that carry out these activities are employees of [SUNE], and their services are provided to us or for our benefit under the [MSA]."  SOF ¶¶ 45-56; Ex. 71 at 191; Ex. 73 at 160 (emphasis added).  With respect to executive officers specifically, the S-1s affirmed that "**We do not and will not employ any of the persons responsible for managing our business**" and further confirmed that the Yieldcos "**will not reimburse** SunEdison for compensation related expenses attributable to any executive's or employee's time dedicated to providing services to us," and that the base management fee paid by the Yieldcos was unrelated to executive compensation.  *Id*. (emphasis added); SOF ¶ 65.

TERP's Annual Report (10-K) dated March 13, 2015, signed and certified by Plaintiff, stated unequivocally that "[TERP] does not have any employees.  The personnel that manage our operations are employees of SunEdison and their services are provided to [TERP] under the [MSA]."  SOF ¶ 49.  In the same document, when discussing potential risks to investors, TERP disclosed that "[o]ur executive officers are employees of SunEdison" and "SunEdison may terminate the employment of any professional."  *Id*.  Finally, it stated that "[w]e will rely on SunEdison to provide us with management services under the [MSA] and will not have independent executive, senior management or other personnel."  *Id.*; Ex. 17. at 45.

Indeed, when hiring other members of the Yieldco executive team, Plaintiff made clear that they were to be employees of SUNE only.  For example, Plaintiff's offer letter to the Yieldcos' COO, Francisco Perez Gundin, extended an offer to join "NVT, LLC, a wholly-owned subsidiary of SunEdison, LLC . . . in the position of Chief Operating Officer, TerraForm Power, Inc."  SOF ¶ 68.  The offer letter, on SUNE letterhead, stated that bonus payments may be "subject to approval by the SunEdison Board of Directors" and that relocation allowances were

dependent on continued "employment with SunEdison." SOF ¶ 68. Further, the November 20, 2015 request by the Yieldcos' conflicts committees to SUNE, which asks SUNE to direct the Yieldcos' executive officers to act solely for the Yieldcos, indicates that SUNE directed the Plaintiff's actions as a Yieldco officer. SOF ¶ 69. Even Plaintiff's initial *post-termination* communications concerning his severance were with SUNE and its counsel, rather than with the Yieldcos. These communications identified him as a SUNE executive. SOF ¶ 71. When Mr. Domenech first alleged retaliation under SOX, he attributed the termination of his employment and alleged retaliation to SUNE only – not to the Yieldcos. SOF ¶ 71. He brought this action against the Yieldcos only after SUNE filed for bankruptcy. *Id.*

Consistent with this documentary record, every deponent asked directly about the issue confirmed that SUNE, not the Yieldcos, employed the Yieldcos' senior management. SOF ¶¶ 60-61.[4]

Thus, there is no genuine dispute that SUNE, and not the Yieldcos, employed Plaintiff. He cannot cure this deficiency by arguing that the Yieldcos employed him under the "joint employer" or "single integrated enterprise" doctrines. First, the "single integrated enterprise" doctrine "is designed to test whether a *parent company* can be liable for the employment decisions of a related entity"—not whether a publicly traded *subsidiary* can be held liable for the allegedly unlawful employment acts of its controlling shareholder. *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 604 (S.D.N.Y. 2012) (emphasis added). Plaintiff cites *no* case holding that a subsidiary was, or could be, liable for the acts of a *parent* against the parent's *own* direct employees.

---

[4] Plaintiff, when questioned about the S-1 statements that he signed, claimed that he did not know the specific legal structure governing his employment. SOF ¶ 54.

And even if the doctrine applied in reverse, it is inapposite here.  Plaintiff's emphasis on the importance of centralized labor relations to the doctrine (*see* Dkt. 111 at 7-8) proves too much; as *Leshinsky* confirmed, that issue can be "distilled to a critical question: what entity made the final decision regarding employment matters related to the person claiming discrimination?" 873 F. Supp. 2d at 603 (citation omitted); *see also Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 285 (E.D.N.Y. 2013).  Here, that entity was the SUNE Board. ‼

As to the joint employer doctrine, the Second Circuit has never held that the doctrine is applicable under SOX.  In any event, "[a] conclusion that employers are 'joint' assumes that they are separate legal entities, but that they have merely chosen to handle certain aspects of their employer-employee relationships jointly."  *Clinton's Ditch Co-op Co. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985).  Here, SUNE and the Yieldcos made no such choice.  Rather, the Yieldcos manifested their intent not to have *any* employer-employee relationships with executive officers and deferred to SUNE to manage employment under the terms of the MSAs.

Finally, the Yieldcos are not liable as agents of SUNE.  As the Supreme Court observed, SOX contemplates "an employer-employee relationship between the retaliator and the whistleblower."  *Lawson v. FMR LLC*, 571 U.S. 429, 442 (2014).  To the extent that SOX extends liability to agents of publicly traded corporations, it does so with respect to the agent's *own* employees.  *Leshinsky*, 873 F. Supp. 2d at 605; *see also Matter of: Walters v. Deutsche Bank AG*, 2009 WL 6496755 (U.S. Dept. of Labor SAROX Mar. 23, 2009) at *7 (purpose of SOX whistleblower provisions is to create "an environment in which whistleblowers can come forward without fear of losing their jobs").  Defendants are aware of no case, and Plaintiff has identified none, that held any company liable for retaliation against an individual who was not

the company's employee—nor is it clear *how* an agent could take an adverse employment action against an employee of another entity.

**B.      Mr. Chatila Is Not Individually Liable**

There also can be no section 1514A liability against Mr. Chatila.  The only alleged acts of retaliation underlying Plaintiff's claims are his removal from his roles with GLBL and TERP and the termination of his employment with SUNE.  Plaintiff's attempt to hold Mr. Chatila individually liable for them is contrary to the law of the case and the plain language of section 1514A.  As this Court has already determined, section 1514A does not provide for director liability.  And to the extent Plaintiff is instead suing Mr. Chatila in his capacity as an officer or employee of SUNE, his claim still fails because the SUNE Board—and not Mr. Chatila individually—terminated Plaintiff's employment.  Mr. Chatila is entitled to summary judgment.

To the extent Plaintiff's section 1514A claim against Mr. Chatila is premised on the Yieldcos' boards of directors removing Plaintiff from his roles with the Yieldcos, it is necessarily a claim of director liability and therefore fails as a matter of law.  Mr. Chatila served as a member of TERP's and GLBL's respective boards of directors, but had no other role at the Yieldcos, and this Court has already held that section 1514A "does not provide for director liability."  MTD Order at 24–25.  The Court's determination is the law of the case.  *See ACLI Gov't Sec. v. Rhoades*, 1998 WL 142347, at* 1 (S.D.N.Y. Mar. 26, 1998).

Summary judgment for Mr. Chatila is further warranted to the extent Plaintiff's retaliation claim against Mr. Chatila is premised on the termination of Plaintiff's employment with SUNE.  The uncontroverted evidence demonstrates that the SUNE Board terminated

Plaintiff's employment as Executive Vice President of SUNE.  SOF ¶ 95.[5]  Mr. Chatila's role as a member of the SUNE Board cannot be the basis of liability against him, MTD Order at 24–25 (no director liability under section 1514A), nor can his role as a SUNE officer or employee.  If section 1514A does not "allocate liability" for allegedly "retaliatory actions of a board" to that board's own members, MTD Order at 24–25, then it certainly does not allocate liability for the board's actions to the company's individual officers and employees.

As relevant here, section 1514A proscribes "discharg[ing]" an employee in retaliation as specified by the statute.  18 U.S.C. § 1514A(a).  It was the SUNE Board that "discharge[d]" Plaintiff, *not* Mr. Chatila acting individually as SUNE's CEO.  SOF ¶ 95.  Perhaps acknowledging as much, Plaintiff seeks to rewrite the statute by arguing that Mr. Chatila may be liable as an officer or employee for purported "material involvement" in the termination of his employment.  Dkt. 112 at 4–5.  The Court should reject Plaintiff's attempt to read in this broad and exceedingly vague category of liability to section 1514A.[6]

Plaintiff's wishful "material involvement" standard goes far beyond the statutory text identifying those for whom Congress determined liability was appropriate.  It would cover, for example, those who were not themselves the decisionmaker in a discharge, or only executed a decision made by others.  Plaintiff relies on *Leznik v. Nektar Therapeutics, Inc.*, 2007 WL

---

[5] *See* SOF ¶ 95 Ex. 44 (E. Hernandez Dep. Tr.) 382:7–23 (confirming that the SUNE "board deliberated as a body" and decided to terminate Plaintiff's employment); Ex. 42 (Tesoriere Dep. Tr.) 139:12–140:4 (the SUNE board "firmly concluded that firing" Plaintiff "was in the best interest of" SUNE and the Yieldcos); Ex. 34 (Blackmore Dep. Tr.) 186:16–20; 188:17–22; 305:3-21 (describing the SUNE board's decision process); Ex. 32 Chatila Dep. Tr. 325:22–326:2 (confirming that the SUNE board made the decision to terminate Plaintiff).  This testimony is consistent with Plaintiff's own complaint, which alleges that SUNE used "its controlling power" to terminate Plaintiff's employment.  Dkt. 1 at ¶ 111.

[6] Mr. Chatila fully reserves all rights to oppose Plaintiff's forthcoming argument to this effect and in no way concedes that any action or statement described in Plaintiff's pre-motion letters was done or made in his capacity as an officer or employee (as opposed to as director) or that those actions or statements individually or collectively amount to "material involvement."  Mr. Chatila raises the issue now only to address the issue of the proper legal standard at the outset.

5596626 (ALJ Nov. 16, 2007), a decision by the U.S. Department of Labor's ("DOL") Office of Administrative Law Judges ("OALJ"). The OALJ's opinions are "not binding authority," *Rao v. Daimler Chrysler Corp.*, 2007 WL 1424220, at *3 (E.D. Mich. May 14, 2007), and neither the Second Circuit nor any district court in the Circuit has adopted *Leznik*. Not only is the opinion non-binding, it is entirely unpersuasive. *Leznik* created the "materially involved" standard out of whole cloth without explanation, citation of any authority, or examination of the statutory text or legislative history. *Leznik*, 2007 WL 5596626, at *11.

It is undisputed that the SUNE Board—and not Mr. Chatila individually in his capacity as a SUNE officer or employee—"discharge[d]" Plaintiff, 18 U.S.C. § 1514A(a), when it terminated Plaintiff's employment with SUNE. Any involvement Mr. Chatila allegedly had as an officer or employee in the SUNE Board reaching its decision or in executing the board's decision once made is simply not a statutory basis of individual liability. Instead, the only potential avenue for recourse that section 1514A provides to a plaintiff who, as here, claims to be aggrieved by an action of a board of directors is an action against the employer "company as a whole." MTD Order at 24–25. Plaintiff presumably brought his claims against Mr. Chatila (and the other Defendants in this case), rather than SUNE because SUNE had filed for bankruptcy at the time Plaintiff's complaint was filed and "a stay of litigation against SUNE [was] automatically imposed as a matter of bankruptcy law." SOF ¶ 17. But an employer's bankruptcy does not somehow serve to create individual liability where Congress has declined to do so. The Court should reject Plaintiff's misguided attempt at a workaround and enter summary judgment for Mr. Chatila.

## II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER THE APPLICABLE BURDEN-SHIFTING FRAMEWORK

Defendants are also entitled to summary judgment under the burden-shifting framework

of AIR 21, which is applicable to section 1514A claims and requires Plaintiff to set forth facts sufficient for a rational factfinder to find he has established a *prima facie* case. *Bechtel*, 710 F.3d at 446–47. Plaintiff has failed to meet his burden because there is no evidence in the record that his purported whistleblowing was a contributing factor in the termination of his employment with SUNE, and summary judgment for Defendants is warranted.[7] Further, even if Plaintiff had met his burden (he has not), Defendants are still entitled to summary judgment because they have met theirs: the record clearly and convincingly demonstrates that SUNE would have terminated Plaintiff's employment even absent his alleged protected activity.[8]

A.    **Plaintiff Cannot Meet His Burden To Demonstrate His Alleged Protected Activity Was A Contributing Factor In The Termination Of His Employment**

To set forth a *prima facie* case, a plaintiff must establish that his protected activity was a contributing factor in the unfavorable personnel action at issue. At summary judgment, this means the plaintiff must "produce evidence of intentional retaliation prompted by the employee engaging in protected activity." *Tompkins v. Metro-N. Commuter R.R. Co.*, 983 F.3d 74, 79–82 (2d Cir. 2020) (discussing Federal Railroad Safety Act ("the FRSA"), which like SOX, is governed by AIR 21) (internal quotation marks omitted); *see also id.* at 79 & n.13 (burdens of proof under FRSA are same as those under SOX). After extensive discovery, Plaintiff has failed to adduce a single piece of evidence of intentional retaliation. Nor can Plaintiff rely on any temporal proximity between his purported protected activity and the termination of his SUNE

---

[7] Defendants do not concede that the actions and statements that Plaintiff claims constitute his protected activity actually occurred or occurred as Plaintiff describes them, nor that they constituted protected activity for purposes of section 1514A. However, Defendants acknowledge that factual disputes regarding these alleged actions and statements preclude a motion for summary judgment as to the first two elements of Plaintiff's *prima facie* case.

[8] The analysis as to Plaintiff's removal from the Yieldcos and his termination from employment at SUNE overlaps entirely. This is because the respective boards of the Yieldcos removed Plaintiff from his roles for the reasons described by the SUNE Board. SOF ¶ 104.

employment.  The law of the Second Circuit is clear:  temporal proximity alone is insufficient to survive a motion for summary judgment.  Regardless, intervening events between the supposed protected activity and Plaintiff's termination from employment provided legitimate bases for that termination.  Defendants are entitled to summary judgment.

      **1.**     **The Record Contains No Evidence Of Retaliation And Instead Contains Considerable Evidence To The Contrary**

Discovery spanned almost two years and included fourteen fact witness depositions and the production of hundreds of thousands of documents.  Nevertheless, this considerable record is devoid of any documents or admissible witness statements suggesting protected activity had anything to do with the SUNE Board's decision to terminate Plaintiff's employment.  There is not a single email, text message, document, or witness statement from those involved in the termination suggesting that anyone was angry, upset, or disappointed with Plaintiff for his supposed whistleblowing, or that anyone sought to avoid investigation of his purported concerns.  Plaintiff's bare speculation that there was a retaliatory motive, *see, e.g.* Ex. 35 (Domenech Dep. Tr.) 299:19–300:4, 364:13–20, 370:7–371:12, is insufficient at the summary judgment stage.  *See D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."); *see also Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d Cir. 1996) (affirming grant of summary judgment on retaliation claim where plaintiff failed to put forth any evidence other than her own belief that defendant's articulated nondiscriminatory reason was pretextual).  Plaintiff's own testimony confirmed that he lacked firsthand knowledge of the decision-making process, as he was not part of meetings or communications regarding his termination by the SUNE Board.  SOF ¶¶ 107-109.

What the record *does* contain is ample evidence that the SUNE Board took Plaintiff's complaints seriously. The board launched a detailed review and asked SUNE management for a presentation on the company's liquidity and financial position.[9] SOF ¶¶ 92-93. Further, the board held a two-day meeting that included discussions about SUNE's liquidity and achievability of management's plan in which it gave Plaintiff the opportunity to present his concerns. SOF ¶ 91. The board ultimately found Plaintiff's complaints to be without merit. SOF ¶ 93.

The members of the SUNE Board who were deposed uniformly testified that Plaintiff's concerns had nothing to do with the board's later determination to terminate his employment. SOF ¶ 98.[10] Their testimony is corroborated by the fact that two other SUNE executives, Mr. Pancho Perez and Paul Gaynor, who had allegedly raised the same complaints in concert with Plaintiff, were *not* terminated.[11] SOF ¶ 99. This fact undercuts any notion that Plaintiff's complaints were a contributing factor in his termination. *See, e.g.*, *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 331–32 (3d Cir. 2016) (that others involved in the protected activity did not receive any negative treatment negated causation); *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 349 (4th Cir. 2014) (holding that "most damaging to [Plaintiff's] claim" was the

---

[9] *See, e.g.*, SOF ¶¶ 92-94; Ex. 50 (stating Plaintiff was "given a full opportunity to express [his] views at the" previous meeting and did not "express[ ] any concern that the financial information or the outlook management presented to" the board "was inaccurate in any respect at the time it was communicated"); Ex. 42 (Tesoriere Dep. Tr.) 95:6–98:22 (describing efforts undertaken in response to Plaintiff's complaints, including personally traveling to St. Louis to investigate the feasibility of management's plan, and meeting with the finance team, internal audit, and KPMG regarding achievability); Ex. 44 (E. Hernandez Dep Tr.) 319:15–320:12 (stating it was "proper" for Plaintiff to have raised his concerns, that he was glad Plaintiff did so, and that it "gave the board an opportunity to get to the bottom of it"); *id.* at 288:21–289:10 (Mr. Hernandez took Plaintiff's "complaints and allegations seriously," and the board "launch[ed] a very detailed review" in response to them).

[10] Such testimony cannot be discounted as self-serving. At the time of their testimony, these witnesses were not parties in this case and no longer served as SUNE board members.

[11] Both men voluntarily resigned from SUNE despite the board members' desire for them to stay on. SOF ¶ 99; Ex. 44 (E. Hernandez Dep. Tr.) 326:19–327:4 (testifying he had "a high regard for Mr. Perez" and "was hoping it would work out" for him to say at SUNE); *id.* at 71:25–72:10 ("I would have wished Mr. Gaynor stayed on with us.").

"fact that [a colleague] was urged to stay despite participating in the very same conduct"); *see also Barrick v. Pngi Charles Town Gaming, LLC*, 799 F. App'x 188, 190 (4th Cir. 2020) (same).

**2.      Arguments Regarding Temporal Proximity Are Insufficient To Survive Summary Judgment And, Regardless, Lack Merit**

Plaintiff is left only to argue that the fact that the SUNE Board terminated his employment roughly six weeks after his purported protected activity supports an inference of causation.  But the Second Circuit recently clarified that the AIR 21 burden-shifting framework requires a plaintiff to show "more than a temporal connection between the protected conduct and the adverse employment action . . . to present a genuine factual issue on retaliation." *Tompkins*, 983 F.3d at 82–83 (affirming summary judgment for the employer); *accord El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam) (holding temporal proximity "without more" was insufficient to create a triable issue of fact in a Title VII case and affirming grant of summary judgment to the employer).  In *Tompkins*, the Second Circuit affirmed summary judgment in favor of the employer notwithstanding the fact that the employer's discipline of the plaintiff "was close in time" to the alleged protected activity.  *Tompkins*, 983 F.3d at 82–83.  The court noted that the record supported the conclusion that the plaintiff was not disciplined for the protected activity and that plaintiff had not "submitted any evidence to the contrary." *Id.* at 83.  So here, Plaintiff's singular reliance on temporal proximity is insufficient to defeat Defendants' motion for summary judgment.

In any event, a causal inference based on temporal proximity may be severed where legitimate intervening events independently justify the adverse personnel action, which is what occurred here.  *See, e.g.*, *Tompkins*, 983 F.3d 74, 82 & n.38; *Fraser v. Fiduciary Tr. Co. Intern.*, 2009 WL 2601389, at *6–7 (S.D.N.Y. Aug. 25, 2009) (granting defendants' motion for summary judgment), *aff'd*, 396 F. App'x 734 (2d Cir. 2010).  There had been issues with Plaintiff's

performance throughout the late summer and fall of 2015.  After Plaintiff raised his concerns in early October 2015, these performance issues continued.  SOF ¶¶ 72-91.  For example, in November, pressure mounted to close the Vivint Transaction but Plaintiff was refusing to cooperate in securing the TERP conflicts committee's approval.  SOF ¶¶ 79-87.  Further, in or around late October or November 2015, Plaintiff revealed confidential information to BAML, resulting in BAML pulling out of an important transaction with SUNE.  SOF ¶¶ 88-91.  These intervening events, which are discussed in further detail below, constitute legitimate bases for the SUNE Board's termination of Plaintiff's employment on November 20, 2015, and break any causal chain between Plaintiff's supposed whistleblowing and his termination.  *See, e.g.*, *Feldman*, 752 F.3d at 349 (employee's insubordination was a "legitimate intervening event" that severed any causal connection).

### B.    The SUNE Board Would Have Terminated Plaintiff's Employment Absent The Alleged Protected Activity

Even if Plaintiff could establish a *prima facie* case (he cannot), summary judgment is still warranted because Defendants have demonstrated by clear and convincing evidence that the SUNE Board would have terminated his employment in the absence of his purported protected activity. *Bechtel*, 710 F.3d at 447; *see also Pardy v. Gray*, 2008 WL 2756331, at *7 (S.D.N.Y. July 15, 2008) (granting summary judgment upon defendant's showing of clear and convincing evidence that plaintiff's "termination was for performance-related issues unrelated to" the alleged protected activity).  Indeed, the record plainly demonstrates three legitimate reasons, detailed below, for the termination.  Each of these reasons relates to the same overarching problem with Plaintiff, which has nothing to do with alleged protected activity:  Plaintiff was spending his time on infighting and self-serving, counterproductive actions all while SUNE was in a precarious financial position necessitating focus from—and cooperation between—its executives.

19

*First*, in a dereliction of duty, Plaintiff failed to support and advance transactions with the Yieldcos that the SUNE Board viewed as crucial for SUNE's survival, in particular the Vivint Transaction.  It is undisputed that Plaintiff was responsible for advancing these transactions and facilitating their approval by the Yieldcos' conflicts committees.  SOF ¶ 81.  Witnesses testified that, instead, Plaintiff abandoned—and even obstructed and opposed—the transactions.  SOF ¶¶ 85-86.  Plaintiff's disappearing act and refusal to cooperate at this critical moment for the company was perhaps "the biggest factor that led to his termination" and the "biggest concern" to the SUNE Board.  SOF ¶ 97.  *See, e.g.*, *Guitron v. Wells Fargo Bank, NA*, 619 F. App'x 590, 591 (9th Cir. 2015) (per curiam) (affirming grant of summary judgment where defendant presented "clear and convincing evidence" that plaintiff's employment was terminated for failure to meet sales goals, insubordination, and failure to return to work).

*Second*, the SUNE Board discovered that Plaintiff had engaged in subversion by leaking confidential information about SUNE's financial condition to BAML, resulting in BAML cancelling its tax equity contributions to a set of projects SUNE was developing in Hawaii.  SOF ¶¶ 88-90.  The leak, which one board member described as a "significant issue," was a factor in the SUNE Board's decision to terminate Plaintiff's employment.  SOF ¶ 90.  *See Hartzman v. Wells Fargo Advisors, LLC*, 2017 WL 2982997, at *7 (M.D.N.C. July 12, 2017) (defendant had presented clear and convincing evidence that it would have terminated plaintiff's employment for "his public disclosure of confidential internal company documents" even in absence of any protected activity).  As *Hartzmann* explained, "[w]histleblower provisions are not intended to be used by employees to shield themselves from the consequences of their own misconduct or failures."  *Id.* at *8 (citation omitted).

*Third*, as witnesses testified, Plaintiff prioritized himself over the team's needs and

colleagues found it increasingly difficult to work with him.  SOF ¶¶ 73, 75-77.  *See, e.g.*, Ex. 42 (Tesoriere Dep. Tr.) 129:3–14 ("Carlos acted for himself first."); Ex. 43 (Wuebbels Dep. Tr.) 257:24–258:6 ("[A]reas where [Plaintiff] was very collaborative maybe in the past . . . it just seemed that that was changing . . . .").  Plaintiff openly sought to usurp Mr. Chatila's position as CEO of SUNE.  *See, e.g.*, Ex. 42 (Tesoriere Dep. Tr.) 103:4–7 ("Q. Did Mr. Domenech ever tell you he wanted to be CEO of SunEdison? A. Yes.").  The result was a division between management at an already challenging time for the company.  SOF ¶ 74.  *See, e.g.*, Ex. 42 (Tesoriere Dep. Tr.) 134:21–135:13 (explaining that it became apparent to the board that Plaintiff and Mr. Chatila "couldn't work in tandem any longer").  Plaintiff's "lobbying of executives in a very unprofessional way" to increase his own power within the company was a ground for the board's termination of his employment.  SOF ¶ 77.  When, as here, presented with clear and convincing evidence that the plaintiff was terminated for "aggressive" and "unprofessional" behavior, courts have not hesitated to grant summary judgment for the defendants.  *Hemphill v. Celanese Corp.*, 430 F. App'x 341, 345 (5th Cir. 2011) (affirming grant of summary judgment).

Defendants are therefore entitled to summary judgment because the record reflects legitimate bases for Plaintiff's termination from employment that are unrelated to—and would have led to Plaintiff's termination regardless of—the alleged protected activity.

## III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY ARE NOT LIABLE FOR PLAINTIFF'S ALLEGED INJURIES OR DAMAGES

### A.   Defendants Did Not Cause Plaintiff's Alleged Injuries Or Damages

A fundamental principle of federal law is that a plaintiff must plausibly allege an injury traceable to the wrongful actions ***of the defendant***.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (plaintiff must allege "a causal connection between the injury and the conduct

complained of—the injury has to be fairly . . . trace[able] to the challenged action of the

defendant, and not . . . th[e] result [of] the independent action of some third party not before the

court." (citation omitted)).  That principle attaches in wrongful termination cases.  *See Selzer v.*

*Fleisher*, 629 F.2d 809, 814 (2d Cir. 1980) (holding in wrongful termination case that "rule of

causation is applicable to each defendant separately and cannot be satisfied by a finding as to the

defendants collectively"); *see also In re Sec. Capital Assur. Ltd. Sec. Litig.,* 2011 WL 4444206,

at *3 (S.D.N.Y. Sept. 23, 2011) (observing that, under Exchange Act of 1934, "a plaintiff must

allege that each defendant" proximately caused the complained-of injury).  SOX therefore

requires Plaintiff to demonstrate, *as to each Defendant*, an adverse personnel action that resulted

in Plaintiff's alleged damages.  *Bechtel*, 710 F.3d at 447.  Pursuant to the text of section 1514A,

that action must affect "the terms and conditions of" Plaintiff's employment.  *Kshetrapal v. Dish*

*Network*, LLC, 2018 WL 1474375, at *8 (S.D.N.Y. Mar. 23, 2018).

Plaintiff has not and he cannot identify any injury-in-fact arising out of his removal from

his roles at the Yieldcos.  The undisputed facts demonstrate that until SUNE terminated his

employment, which occurred *after* his removal from the Yieldcos, Plaintiff retained his job, his

salary, and his right to unvested TERP and GLBL shares.  *See e.g.*, SOF ¶¶ 70, 104-106; Compl.

¶ 111.  Plaintiff's employment agreement was with NVT, the U.S. operating entity of SUNE, and

as seen in his 2015 W-2, his compensation came from NVT and SUNE.  SOF ¶ 43.  That

compensation, including Plaintiff's Yieldco stock awards, was included in SUNE's financial

statements.  SOF ¶¶ 48.  The Yieldcos did not pay Plaintiff's salary or benefits, nor compensate

SUNE for doing so; as long as Plaintiff remained employed at SunEdison, he would receive

compensation from SUNE.  SOF ¶¶ 43, 65.

By the plain terms of the governing stock agreements, Plaintiff's Yieldco stock would

continue to vest if he remained in continuous service with an "affiliate" of the Yieldcos; for example, Plaintiff's stock agreement with TERP provided that he would forfeit shares only upon termination from TERP "and its affiliates," SOF ¶ 112.  Under the TERP LTIP, those "affiliates" expressly included SUNE.  *See* SOF ¶ 113, Exs. 60, 61 at 1 (stating that SUNE "shall at all times be deemed to be an 'Affiliate' for purposes of determining whether a termination has occurred").  Therefore, if Plaintiff remained employed by SUNE, his shares under the TERP RSA would continue to vest irrespective of whether he held any role at TERP.

So, too, with Plaintiff's unvested GLBL shares.  Similar provisions stated that Plaintiff would forfeit unvested shares only upon a termination of continuous service, which the GLBL LTIP specified would not occur so long as Plaintiff was employed or providing services to either GLBL *or* an affiliate, again expressly including SUNE.  SOF ¶ 112.  In denying Defendants' Motion to Dismiss, this Court observed that based on the limited record, "defendants have not directed the Court to language in the agreements demonstrating that, as a matter of law, Domenech's compensation was based solely on his employment with SUNE and not his employment with the two [Y]ieldcos."  MTD Order at 29.  After nearly two years of fact discovery and unconstrained by a Rule 12(b)(6) record, Defendants have now done so.[12]

It is further undisputed that in the afternoon of November 20, 2015, after the SUNE Board expressed its intent to terminate Plaintiff, each Yieldco held a board meeting and removed Plaintiff from his positions as Yieldco President, CEO, and director.  SOF ¶ 104.  At that moment, Plaintiff lost *nothing*—he remained entitled to his full SUNE salary and his stock

---

[12] Although Plaintiff initially asserted that he suffered "reputational damages," he no longer asserts such harm. SOF ¶ 116; *cf.* MTD Order at 30 ("It is possible that, even if Domenech's compensation turned entirely on his employment with SUNE and not the yieldcos, he could still be entitled to non-economic damages for retaliatory acts of the yieldcos.").  Similarly, Plaintiff does not seek damages for emotional distress, nor can he point to record evidence demonstrating emotional distress.  *Id.*

options.  It was only *later that afternoon* that SUNE Human Resources Director Stephen Cerrone

met with Plaintiff and terminated his SUNE employment.  SOF ¶ 106.  *That* is when and how

Plaintiff lost the salary, benefits, and stock that he identifies as his injuries.  If SUNE had not

terminated his employment, Plaintiff would have lost nothing.  Plaintiff has therefore failed to

allege or demonstrate any injury traceable *to Defendants*.[13]  *Rothstein v. UBS AG*, 708 F.3d 82,

91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)) ("The

traceability requirement for Article III standing means that the plaintiff must 'demonstrate a

causal nexus between the defendant's conduct **and the injury**.'") (emphasis added).  Defendants

are entitled to summary judgment.

**B.    Plaintiff's Failure To Make Any Effort To Seek Alternative Employment Bars
        Recovery Of Damages**

Finally, although the Court need not reach the issue given the independently dispositive

issues discussed above, Plaintiff cannot recover back pay or front pay because his admitted

failure to make *any* effort, let alone reasonably diligent efforts, to seek comparable employment

completely bars recovery as a matter of law.  A defendant can prove failure to mitigate by

showing "(1) that the plaintiff did not exercise reasonable diligence in seeking comparable

employment; and (2) that comparable employment was actually available had the plaintiff

exercised reasonable diligence."  *Meyer v. United Air Lines, Inc.*, 950 F. Supp. 874, 876 (N.D.

---

[13] In his Response to Defendants' Pre-Motion Letter, Plaintiff relied on an unpublished case from the Eastern District of Virginia that did not concern SOX to argue that "causation in a retaliation claim centers on whether the protected activity led to the retaliatory act, not whether the retaliatory act caused the injury." *Coles v. Deltaville Boatyard, LLC*, 2011 WL 1750896, at *4 (E.D. Va. May 6, 2011).  *Coles* is not controlling, but nevertheless, it does not support Plaintiff's position.  Even *Coles* acknowledged that "where there is no proof that the alleged retaliation had any effect on a plaintiff," an allegedly retaliatory act did not "lead to any adverse employment action."  *Id.* at *5.  That is the case here with respect to the Yieldcos—as set forth above, Plaintiff has yet to identify any injury-in-fact that is attributable to the Yieldcos rather than SUNE.  In any event, as set forth herein, it is well- established that the law of Article III standing precludes an action in federal district court against a defendant where a plaintiff can show no injury traceable to that defendant.  *See e.g., Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013).

Ill. 1997) (citation omitted); *see also Arbercheski v. Oracle Corp.*, 650 F. Supp. 2d 309, 312 (S.D.N.Y. 2009) (granting motion for partial summary judgment for failure to mitigate damages in Title VII case where employee failed to search for comparable employment).

During his deposition, Plaintiff conceded several times that he never even *attempted* to search for a new job following the termination of his employment from SUNE, baselessly asserting that he would not have been successful in finding what he deemed comparable employment—as a CEO of a publicly traded company or a top executive at a major private equity firm.  SOF ¶¶ 117-118.

Nor could any reasonable jury find, against the record of Plaintiff's failure to look for a job, that he had no reasonable prospect of obtaining comparable alternative employment.  Where a plaintiff "never applied for other jobs, it is pure speculation that no one else would have hired him." *Sanderson v. City of New York*, 1998 WL 187834, at *7 (S.D.N.Y. Apr. 21, 1998) (denying the award of front pay to plaintiff).  There were indeed many comparable executive positions available at companies that SUNE considered its peers for which Plaintiff could have applied after the termination of his employment.  SOF ¶ 118.  In fact, Alex Hernandez—the Yieldcos' Chief Financial Officer, who Plaintiff alleges also participated in raising similar concerns—faced no difficulty in securing comparable employment after his departure from SUNE and the Yieldcos as an executive at an energy company. SOF ¶ 121.  Plaintiff's admission that he made no effort to find comparable employment is therefore dispositive, and he should not be entitled to any back pay or front pay.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 2015 WL 13699239, at *3–4 (S.D.N.Y. Mar. 25, 2015) (finding plaintiff failed to mitigate where she had not sent applications to prospective employers or had any interviews).

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment.

Respectfully submitted,

/s/ *Timothy J. Perla*
Timothy J. Perla
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: 617-526-6696
timothy.perla@wilmerhale.com

Michael G. Bongiorno
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-937-7220
michael.bongiorno@wilmerhale.com

*Attorneys for Defendants TerraForm Global Holdco, LLC and TerraForm Power Parent, LLC (formerly TerraForm Power, Inc.)*


/s/ *Joel M. Cohen*                          /s/ *E. Martin Estrada*
Joel M. Cohen                                E. Martin Estrada
Gabrielle Levin                              Brandon E. Martinez
Darcy C. Harris                              Cory M. Batza
GIBSON, DUNN & CRUTCHER LLP                  MUNGER, TOLLES & OLSON LLP
200 Park Avenue                              350 S. Grand Avenue, 50th Floor
New York, NY 10166-0193                      Los Angeles, CA 90071
Telephone: 212-351-3901                      Telephone: 213-683-9100
jcohen@gibsondunn.com                        martin.estrada@mto.com
glevin@gibsondunn.com                        brandon.martinez@mto.com
dharris@gibsondunn.com                       cory.batza@mto.com

*Attorneys for Ahmad Chatila*                *Attorneys for Brian Wuebbels*